## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

HECTOR GARCIA,

      Plaintiff,

v.

MIKE REZI a/k/a MICHAEL REZI
and CAROLINA REZI a/k/a
CAROLINA ROSINI,

      Defendants.

Civil Action No.
1:22-cv-03424-VMC

## ORDER

The matter is before the Court on Plaintiff Hector Garcia's Motion for Remand (Doc. 6), Motion for Sanctions (Doc. 15), Motion to Stay Discovery (Doc. 16), and Defendants Mike Rezi a/k/a Michael Rezi ("Mr. Rezi") and Carolina Rezi a/k/a Carolina Rosini's ("Ms. Rosini,"[1] and together with her husband Mr. Rezi, the "Rezis") Motion for Leave to File Under Seal (Doc. 10).

## I.     Background

Mr. Garcia brings this tort and contract action involving purely questions of state law against his former employers, Mr. Rezi and Ms. Rosini. (Doc. 1 ¶ 1; Doc. 1-7). From approximately March 27, 2022 until June 2022, Mr. Garcia was

---

[1] Although the Complaint refers to Ms. Rosini as "Carolina Rezi," she uses her maiden name, Carolina Rosini, in her Declaration and supporting exhibits, so the Court will refer to her as Ms. Rosini.

employed as an "estate manager/butler" at a home owned by the Rezis in Atlanta, Georgia[2] (hereafter, the "Atlanta Property"). (Doc. 1-7 ¶¶ 7-8, 18-25). The allegations in the Complaint arise out of a dispute between Mr. Garcia and Mr. Rezi on or about June 14, 2022 and subsequent fallout therefrom, which resulted in the end of Mr. Garcia's employment. (Doc. 1-7 ¶¶ 16-29).

On July 28, 2022, Mr. Garcia filed his Verified Complaint in the Superior Court of Fulton County, Georgia (the "State Court"). (Doc. 1-7). The Rezis removed the case to this Court on August 24, 2022. (Doc. 1). The Rezis allege that this Court has diversity of citizenship subject matter jurisdiction over this action because the Parties are completely diverse.[3] According to the Rezis, Mr. Garcia is domiciled in Georgia, Mr. Rezi is domiciled in Tennessee, and Ms. Rosini is an Italian citizen and a lawful permanent U.S. resident[4] domiciled in Tennessee.

---

[2] The Court will refer to residence addresses only by their city and state. The Court also notes that thus far, both Parties have filed documents that are not in compliance with Northern District of Georgia Standing Order No. 04-02. The Parties are directed to ensure that their future submissions are compliant with this Standing Order.

[3] The Parties do not dispute that the $75,000 amount in controversy requirement for diversity jurisdiction is satisfied here, and the Court agrees. (*See* Doc. 1-7 at 7).

[4] Under 28 U.S.C. 1332(a)(2), "district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State." Therefore, if Ms. Rosini is domiciled in the same state as Mr. Garcia, there is no diversity jurisdiction in this case.

Plaintiff and Defendants have both submitted various types of documentation seeking to establish Defendants' domicile in one state or the other.

## II.    Plaintiff's Motion for Remand

Plaintiff contends that this case must be remanded to the State Court for two reasons: first, due to a procedural deficiency in Defendants' Notice of Removal; and second, because Defendants are domiciled in Georgia, not Tennessee.

### A.    Legal Standard

An action is removable if "the district courts of the United States have original jurisdiction" over the action. 28 U.S.C. § 1441. Original jurisdiction of the district courts of the United States may be based on an action arising out of the Constitution or laws of the United States (federal question jurisdiction) or diversity of citizenship of the parties (diversity jurisdiction). 28 U.S.C. §§ 1331, 1332.

Defendants' sole asserted basis for jurisdiction in this case is diversity.[5] Diversity jurisdiction requires that the parties are citizens of different states and that the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332; *Legg v. Wyeth*, 428 F.3d 1317, 1320 n.2 (11th Cir. 2005) ("Federal diversity jurisdiction under 28 U.S.C. § 1332 requires 'complete diversity'—the citizenship of every plaintiff must be diverse from the citizenship of every defendant."); *Federated Mut. Ins. Co. v.*

---

[5] There is no basis for federal question jurisdiction, as the Complaint raises only issues of state law. (Doc. 1-7).

*McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003). In addition, "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

"Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999). "Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *Id*. The Court must always consider the question of whether it has subject matter jurisdiction to hear a case, even if no party raises it. *See Rembert v. Apfel*, 213 F.3d 1331, 1333-34 (11th Cir. 2000).

"[I]n assessing the propriety of removal, the court considers the document received by the defendant from the plaintiff — be it the initial complaint or a later received paper — and determines whether that document and the notice of removal unambiguously establish federal jurisdiction." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1213 (11th Cir. 2007); 28 U.S.C. § 1446(b)(3) (stating that courts may consider the notice of removal along with "a copy of an amended pleading, motion, order or other paper" to determine whether an action is or has become removable).

**B.     Discussion**

**1. Procedural Deficiency of Notice to State Court Under 28 U.S.C. § 1446(d)**

Plaintiff first argues that the case should be remanded because Defendants failed to comply with the procedural requirements of 28 U.S.C. § 1446(d). At the time of removal on August 24, 2022, Defendants filed a two-page letter with the Clerk of the Fulton County Superior Court with the subject line "Notice of Removal of Action to the United States District Court for the Northern District of Georgia" (the "Removal Letter"). (Doc. 1-3 at 2-3). Plaintiff contends that the Removal Letter was insufficient because it was not a copy of the Notice of Removal filed in this Court (Doc. 1-1), "was not signed pursuant to Rule 11 of the Federal Rules of Civil Procedure," and "did not contain[] a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." (Doc. 6 at 19 (citing 28 U.S.C. § 1446(a)). On September 6, 2022, Defendants filed a complete copy of the Notice of Removal (Doc. 1-1) with the Clerk of the Fulton County Superior Court. (*See* Doc. 12-1).

In support of his Motion, Plaintiff cites to a recent Supreme Court case, *BP P.L.C. v. Mayor & City Council of Baltimore*, which refers in passing to § 1446's requirements, in the context of the reviewability of a remand order concerning a different statute:

5

> To remove a case, a defendant must comply with 28
> U.S.C. § 1446. Essentially, that statute requires the
> defendant to provide affected parties and courts with a
> notice stating its grounds for removal. §§ 1446(a), (d). The
> combination of these actions "effect[s] the removal." §
> 1446(d).

141 S. Ct. 1532, 1538 (2021). The Court finds that this brief mention, in *dicta*, is not

enough for the Court to disregard binding Eleventh Circuit precedent on this

issue. *See*, *e.g.*, *Randall v. Scott*, 610 F.3d 701, 703 (11th Cir. 2010) (quoting *Garrett v.

Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1292 (11th Cir. 2003) (per

curiam) ("While an intervening decision of the Supreme Court can overrule the

decision of a prior panel of our court, the Supreme Court decision must be clearly

on point.")).

In *Peterson v. BMI Refractories*, the Eleventh Circuit found that "failure of

notice to the state court is a procedural defect that does not defeat federal

jurisdiction, even though a federal court might be justified in granting a timely

motion to remand under 28 U.S.C. § 1447 on the grounds of such a defect." 124

F.3d 1386, 1395 (11th Cir. 1997) (finding that federal court had jurisdiction over

removed case where state court received actual notice of the removal via telephone

and in writing). *Peterson* relied on prior Fifth Circuit authority,[6] *Medrano v. Texas*

---

[6] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh
Circuit adopted as binding precedent all decisions of the former Fifth Circuit
issued before October 1, 1981.

and *Adair Pipeline Co. v. Pipeliners Loc. Union No. 798*, both of which stand for the proposition that the state court's actual or constructive notice of the removal, even without the filing of the Notice of Removal, is sufficient to deprive the state court of jurisdiction. *See Medrano*, 580 F.2d 803, 804 (5th Cir. 1978); *Adair*, 325 F.2d 206, 207 (5th Cir. 1963).

Here, Plaintiff has filed a timely Motion for Remand. The Court declines to grant remand on this ground, however, because the State Court was on actual notice of the removal from the time the Removal Letter was filed.

In *Hardy v. Ford Motor Co.*, the Northern District of Alabama considered an identical factual scenario, and declined to remand based on a non-compliant notice of removal filed in state court. No. 7:09-CV-2363-TMP, 2010 WL 11561590 (N.D. Ala. Apr. 28, 2010). There, the compliant notice of removal was ultimately filed in the state court nineteen days after it was filed in federal court. *Id.* at *1. Consistent with the line of authority in *Peterson*, the *Hardy* court found that the failure to immediately file the notice of removal in the state court was procedural, not jurisdictional, stating, "The purpose of the [§ 1446(d)] requirement is to notify the state court that it has been divested of jurisdiction by the removal. As long as the federal court obtains subject-matter jurisdiction through the removal process, notification to the state court can be accomplished even after the removal period expires." *Id.* at *4; *see also Willich v. Wells Fargo Bank, N.A.*, No. 3:12-CV-544-J-32JBT,

7

2012 WL 13098510, at *3 (M.D. Fla. Aug. 13, 2012) ("Nevertheless, regardless of when removal is 'effected' as it relates to the federal court's jurisdiction, the state court retains jurisdiction until such time as the state court receives actual or constructive notice of the removal." (citing *Medrano*, 580 F.2d at 804)). This analysis squares with the language of § 1446(d), which requires only that a defendant give notice to all adverse parties and the state court "[p]romptly after the filing of such notice of removal."[7]

The Court finds that at most, the filing of the Removal Letter rather than the Notice of Removal was a procedural defect which did not divest this Court of jurisdiction. The state court had actual notice of the removal as of the date the Removal Letter was filed, August 24, 2022, which is enough to meet the requirement of § 1446(d) under this Circuit's precedents. Additionally, the Notice of Removal was filed with the state court within 14 days after it was filed in the

---

[7] The Court also finds persuasive the reasoning in the Eastern District of Arkansas's recent decision, *Priority-1, Inc. v. Kitchen & Bath Masters, Inc.*, No. 4:21-CV-2 KGB, 2021 WL 4355247, at *2 (E.D. Ark. Sept. 24, 2021), which cites to *Peterson*. There, the court found, "The 30 day deadline set forth by § 1446 is the deadline for filing the notice of removal with the federal court; § 1446(d) does not require that a notice be filed with the state court within 30 days from the time defendant is aware the case is removable." *Id.* (citing *Macklin v. Flexi USA, Inc.*, No. 4:07CV746 SNL, 2007 WL 2360130, at *1 (E.D. Mo. Aug. 14, 2007)). "Under the circumstances of this case, the Court determines that the defendant 'promptly' filed the notice of removal with the state court, and the Court denies [plaintiff's] motion to remand on this ground." *Id.*

federal court — even sooner than it was filed in *Hardy*. Plaintiff's Motion for Remand on this procedural ground is denied.

### 2. Analysis of Defendants' Domicile

Plaintiff also argues that Defendants are domiciled in Georgia, which would defeat the Court's diversity jurisdiction. In order to determine citizenship for the purposes of diversity jurisdiction, the Court must look to the Parties' respective domicile(s). "Individuals . . . are only citizens of the state in which they are domiciled . . . and they have only one domicile." *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1346 (11th Cir. 2011). Domicile is defined as the place of a person's "true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *Id.* (quoting *Sunseri v. Macro Cellular Partners*, 412 F.3d 1247, 1249 (11th Cir. 2005)). "Domicile is not necessarily synonymous with residence . . . one can reside in one place but be domiciled in another." *D.R. ex rel. Igles v. Grant*, 770 F. Supp. 2d 1337, 1344 (M.D. Ga. 2011) (citing *Miss. Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 48 (1989)) (internal quotation marks omitted). "For diversity purposes, . . . mere residence in the State is not sufficient." *Id.* (quoting *Mas v. Perry,* 489 F.2d 1396, 1399 (5th Cir. 1974)).

Here, the determination of Defendants' domicile is the issue that will decide whether this Court has subject matter jurisdiction. A person's domicile is

determined by a review of the "totality of the evidence" and "no single factor is conclusive." *Comprehensive Care Corp. v. Katzman*, No. 8:09-CV-1375-T-24TBM, 2009 WL 3157634, at *2 (M.D. Fla. Sept. 25, 2009) (citing *Jones v. Law Firm of Hill & Ponton*, 141 F.Supp.2d 1349 (M.D. Fla. 2001)). "Courts generally give little weight to a party's profession of domicile; they do so because these declarations are often self-serving." *Molinos*, 633 F.3d at 1342 (citing 13E Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3612, at 549 (3d ed. 2009)). The "crucial time" for the determination of domicile is "is the time of the commencement of the action." *Id.* (citing *Slaughter v. Toye Bros. Yellow Cab Co.*, 359 F.2d 954, 956 (5th Cir. 1966)).

Under this framework, the relevant date for establishing Defendants' domicile is July 28, 2022, when this action was filed. In support of their Notice of Removal, Defendants submitted a Declaration of Mike Rezi (the "First Rezi Declaration"). (Doc. 1-4). The First Rezi Declaration states that the Rezis "have [their] fixed and permanent home, which [they] own, in Cookeville, Tennessee." (Doc. 1-4 ¶ 3). It further states that Mr. Rezi is registered to vote in Tennessee, the Rezis identify Tennessee as their "permanent address and domicile for personal taxes," their driver's licenses are from Tennessee, and their personal vehicles are registered and licensed in Tennessee. (Doc. 1-4 ¶ 3). In response to Plaintiff's Motion for Remand, Defendants submitted further documentation in support of

their Tennessee domicile, including an additional Declaration of Mike Rezi (Doc.

12-2, the "Second Rezi Declaration"), and a Declaration of Carolina Rosini (Doc.

12-3, the "Rosini Declaration"). The Second Rezi Declaration includes as exhibits:[8]

> (a) a partially-redacted photocopy of Mr. Rezi's Tennessee driver's license, indicating his address in Cookeville, Tennessee (the "Cookeville Address") (Doc. 12-2 at 7);
>
> (b) a partially-redacted photocopy of Ms. Rosini's Tennessee driver's license, indicating her address as the Cookeville Address (Doc. 12-2 at 8);
>
> (c) a photocopy of Mr. Rezi's voter registration card for Putnam County, Tennessee which indicates it was printed on August 31, 2022, and shows the Cookeville Address (Doc. 12-2 at 10);
>
> (d) a screenshot of Mr. Rezi's LinkedIn profile (Doc. 12-2 at 12);
>
> (e) a partially-redacted photocopy of Mr. Rezi's 2021 IRS Form W-2, indicating the Cookeville Address (Doc. 12-2 at 14);

---

[8] "[A] federal court may consider 'summary-judgment-type-evidence'—meaning relevant evidence that would be admissible at trial" "[i]n determining whether the district court has jurisdiction over a removed case pursuant to 28 U.S.C. §§ 1332 and 1441[.]" *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1156 (11th Cir. 2021) (quoting *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001)). In that case, the Eleventh Circuit noted, "[Plaintiff] makes much of the fact that the district court did not authenticate the [Defendants'] documents when addressing the motion for remand, but[,] . . . at this preliminary stage, the evidence need not be authenticated to be considered—instead, it need only be capable of authentication." *Id.*

(f) a partially-redacted photocopy of Mr. Rezi and Ms. Rosini's 2020 IRS Form 1040, showing the Cookeville Address (Doc. 12-2 at 16);

(g) a partially-redacted photocopy of Mr. Rezi and Ms. Rosini's 2021 IRS Form 4868, showing the Cookeville Address (Doc. 12-2 at 17);

(h) a photocopy of a Limited Warranty Deed dated March 24, 2022 between Michael Rezi and Carolina Rosini as Grantors and Florence, LLC as Grantee, granting to Florence, LLC all property rights in the Atlanta Property (Doc. 12-2 at 19-21); and

(i) a photocopy of the Certificate of Organization for Florence, LLC filed with the Secretary of State of Georgia dated January 21, 2022, indicating that the Atlanta Property is the principal office address and the address of Organizers Carolina Rossini [sic] and Michael Rezi (Doc. 12-2 at 22-23).

The Rosini Declaration includes as exhibits:

(a) a partially-redacted photocopy of Ms. Rosini's United States Permanent Resident card (Doc. 12-3 at 7);

(b) a partially-redacted photocopy of Ms. Rosini's U.S. Citizenship and Immigration Services ("USCIS") Form I-797C dated March 30, 2016, showing the Cookeville Address (Doc. 12-3 at 8);

(c) photocopies of messages between Mr. Garcia and Ms. Rosini (Doc. 12-3 at 10-16);

(d) a photocopy of an Instagram post listing various Tennessee-related hashtags (Doc. 12-3 at 18); and

(e) screenshots of iPhone photos dated October 31, 2021 (Doc. 12-3 at 20-21).

12

The Second Rezi Declaration and the Rosini Declaration describe the Rezis' March 2022 purchase of a farm in rural Tennessee where they plan to build a permanent home. (Doc. 12-2 ¶ 6; *see also* Doc. 12-3 ¶ 2). The Rezis also describe how the Atlanta Property is used for family purposes when the family is in Georgia in support of Mr. Rezi's ownership interest in a local car dealership, as well as for Ms. Rosini's business ventures.

Meanwhile, Mr. Garcia cites to various documents in support of his contention that one or both of the Rezis are actually domiciled in Georgia. These include a Verified Declaration of Hector Garcia (the "Garcia Declaration"), as well as:

(a) Mr. Garcia's employment contract, which refers to the Rezis' "residence located in Georgia" (Doc. 1-7 at 11);

(b) a Security Deed for the Atlanta Property recorded on March 13, 2020 (the "2020 Security Deed"), which names the Rezis as "Borrower" and states that "Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days of execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing" (Doc. 6-2 at 2, 8);

(c) a Security Deed recorded on October 27, 2021 (the "2021 Security Deed") which states that the Rezis are Grantor and provides their address as the Atlanta Property (Doc. 6-3 at 2);

13

(d) a partial screenshot of Mr. Rezi's Linkedin profile showing his location as "Atlanta, Georgia" (Doc. 6 at 9);

(e) a partial screenshot of Ms. Rosini's LinkedIn profile showing her location as "Atlanta, Georgia" (Doc. 6 at 10);

(f) a partial screenshot of a Jezebel magazine feature of Ms. Rosini, which indicates she lives in Buckhead, a neighborhood of Atlanta, and she is quoted as saying, "I have tried all the gyms and workout programs Atlanta has to offer." (Doc. 6 at 10-12);

(g) screenshots of an Instagram account with the handle "caroleros" which show photos of Ms. Rosini tagged with the location of Atlanta, Georgia at various times, as well as a use of the hashtag, "#iliveinatlanta" (Doc. 6 at 12-15); and

(h) partial screenshots of Ms. Rosini's Facebook profile showing that she "Lives in Atlanta, Georgia" (Doc. 6-5 at 8).[9]

The Garcia Declaration states that during Mr. Garcia's time working at the Atlanta Property for the Rezis, his experience included "the preparation of breakfast for Mr. Rezi and [Ms. Rosini] and their young son" daily, driving the Rezis' son to school in Atlanta, as well as performing house cleaning, laundry, grocery shopping, and other household chores. (Doc. 6-4 ¶¶ 4-5). The Garcia Declaration

---

[9] Plaintiff also alleges that between when the initial screenshots of this Facebook page were taken by Plaintiff's counsel on August 25, 2022 and his further investigation on August 30, 2022, the statement that Ms. Rosini "Lives in Atlanta, Georgia" was removed from the page, in violation of a litigation hold email sent by Plaintiff's counsel on August 25, 2022. (*See* Doc. 6 at 15-18; Doc. 6-5 at 3-4; 8-13).

further states that during the course of his employment, Mr. Garcia witnessed Mr. Rezi going to work at the car dealership called "Mike Rezi Nissan" in the Atlanta area, and the Rezis (including their son) "living [sic] and treating the Atlanta residence as their main home." (Doc. 6-4 ¶¶ 7, 10).

As stated above, Defendants have the burden to establish their domicile. After a detailed review of the totality of the evidence submitted by the Parties, the Court finds that Defendants have met their burden of establishing that they are domiciled in Tennessee. Despite Plaintiff's contentions, the Rezis do not seek to show a change in domicile — only that their domicile continues to be in Tennessee. *See, e.g., King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1171 (11th Cir. 2007) ("once a [party] shows a former domicile, 'the presumption is that it continues to exist,' and the burden shifts [to the opposing party] to present evidence that the domicile changed." (quoting *Slaughter v. Toye Bros. Yellow Cab Co.*, 359 F.2d 954, 956 (5th Cir. 1966))).

Much of the evidence submitted is of little value to the Court in determining domicile, because a person may have more than one residence at a time without affecting their domicile. *See, e.g., Comm'r of IRS v. Est. of Sanders*, 834 F.3d 1269, 1279 (11th Cir. 2016) ("[W]hile a person may have only one domicile at a time, cases have recognized the possibility that one person may have multiple residences simultaneously." (citations omitted)). Accordingly, even though it does appear

from the evidence that the Rezis use the Atlanta Property as a residence, that is not enough to establish that their domicile is in Georgia. Instead, the weight of the evidence shows that the Rezis are domiciled in Tennessee. The Court gives the heaviest weight to the Rezis' Tennessee drivers' licenses and IRS tax forms, both of which show the Cookeville Address. (Doc. 12-2 at 7-8, 16-17). The Court gives limited weight to the Rezis' declarations, because, as stated previously, these types of declarations are "often self-serving," but affords some weight to the fact that the Rezis both indicate that they intend to build a home and remain on the Tennessee farm property they purchased in 2022 — clearly showing an intent to remain in Tennessee. (*See* Doc. 12-2 ¶ 6; Doc. 12-3 ¶ 2). Limited weight is given to Mr. Rezi's voter registration card showing the Cookeville Address because it was printed at the end of August 2022, after the commencement of this action on July 28, 2022.

Any weight that would have been given to the language in the 2020 Security Deed providing that the Rezis would use the Atlanta Property as their "principal residence" is undermined by the fact that the term "principal residence" is undefined in the 2020 Security Deed. Without more, this language does not serve to establish domicile, or a change from Defendants' pre-existing domicile in Tennessee. Further, the Rezis transferred their interest in the Atlanta Property to Florence, LLC in March 2022, well before the commencement of this action.

16

The Court does not doubt the personal experiences of Mr. Garcia as stated in the Garcia Declaration, but those are indicative only of the Rezis treating the Atlanta Property as a residence for a period of time, not that they intended to make their true, fixed, and permanent home in Georgia. *See Mitchell v. United States*, 88 U.S. 350, 353 (1874) (stating that "[m]ere absence from a fixed home, however long continued, cannot" result in a change in domicile without the requisite intent). The social media and other evidence included by the Parties does not serve to establish domicile in any meaningful way. The Court finds, therefore, that complete diversity is met here and thus the Court has diversity jurisdiction over this action. Plaintiff's Motion for Remand is denied.

## III.    Defendants' Motion To Seal

The Rezis seek to seal Paragraph 21 of the Complaint (Doc. 1-7 ¶ 21, the "Disputed Paragraph"), arguing it is defamatory and paints Mr. Rezi in a false light.

### A.    Legal Standard

"[T]he common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process." *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007) (quoting *Chicago Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). But this right "may be overcome by a showing of good cause, which requires

'balanc[ing] the asserted right of access against the other party's interest in keeping the information confidential.'" *Id.* at 1246. "[W]hether good cause exists . . . is . . . decided by the nature and character of the information in question." *Id.*

> In balancing the public interest in accessing court documents against a party's interest in keeping the information confidential, courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents. *See In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987); *Shingara v. Skiles,* 420 F.3d 301, 305–06 (3d Cir. 2005); *Amodeo,* 71 F.3d at 1050–51. A party's privacy or proprietary interest in information sometimes overcomes the interest of the public in accessing the information. *See Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 598 (1978); Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts,* 105 Harv. L. Rev. 427, 464–74 (1991).

*Id.*

## B.   Discussion

With this framework in mind, the Court considers whether there is good cause to seal this portion of the Complaint. As numerous courts have found, "files that instigate public scandal or libel may be sealed." *Gubarev v. Buzzfeed, Inc.*, 365 F. Supp. 3d 1250, 1257 (S.D. Fla. 2019) (citing *Romero*, 480 F.3d at 1247; *Nixon*, 435 U.S. at 598 (noting that "courts have refused to permit their files to serve as

reservoirs of libelous statements for press consumption")). But the mere denial of allegedly libelous statements is not, without more, a legitimate basis to seal evidence. *See Romero*, 480 F.3d at 1247 (citing *United States v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978); *see also* Wright, Miller & Marcus, supra, § 2035 (same)); *Jackson v. Deen*, No. CV412-139, 2013 WL 1911445, at *2 (S.D. Ga. May 8, 2013), *objections overruled*, No. CV412-139, 2013 WL 3863889 (S.D. Ga. July 25, 2013), and *objections overruled*, No. CV412-139, 2013 WL 3991793 (S.D. Ga. Aug. 2, 2013) ("personal embarrassment and general, reputation-damaging information typically do not justify sealing"). Instead, "so long as material is arguably relevant . . . the presumption of openness weighs heavily in favor of unsealing." *Gubarev*, 365 F. Supp. 3d at 1258.

While Mr. Rezi denies the allegations in the Disputed Paragraph, the Court finds that the information alleged in the Disputed Paragraph is relevant to Mr. Garcia's claims, as it concerns the dispute between Mr. Garcia and Mr. Rezi that ultimately led to the end of Mr. Garcia's employment. Mr. Rezi will have an opportunity to respond to these allegations in his pleadings. The Court finds it unlikely that allowing access to this allegation will cause significant or lasting injury to Mr. Rezi. Accordingly, Defendants' Motion to Seal is denied.

## IV.    Plaintiff's Motion for Sanctions

### A.    Legal Standard

Under Rule 11, an attorney who presents a pleading, motion, or other paper in federal court certifies that to the best of the attorney's knowledge, based on a reasonable inquiry, the following is true:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). If it is later determined that the attorney did not comply with Rule 11(b), the Court may impose appropriate sanctions on the "attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "The purpose of Rule 11 sanctions is to 'reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers.'" *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003) (quoting *Massengale v. Ray*, 267 F.3d 1298,

1302–03 (11th Cir. 2001)). The Eleventh Circuit has found that sanctions are warranted "when a party files a pleading, motion, or paper that (1) is filed in bad faith or for an improper purpose; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) has no reasonable factual basis." *Tacoronte v. Cohen*, 654 F. App'x 445, 449 (11th Cir. 2016) (citing Fed. R. Civ. P. 11(b)(1)–(3) and *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998)). "In deciding whether the signer or the represented party has violated [] Rule 11, a federal district court is required to evaluate whether the motion, pleading or other paper reflected what could reasonably have been believed by the signer at the time of signing." *Aetna Ins. Co. v. Meeker*, 953 F.2d 1328, 1331 (11th Cir. 1992) (citing *Threaf Props. v. Title Ins. Co. of Minn.*, 875 F.2d 831, 835 (11th Cir. 1989); Advisory Committee Note to Fed. R. Civ. P. 11).

### B.   Discussion

Plaintiff's Motion for Sanctions (Doc. 15) is denied. Plaintiff's Motion for Sanctions reiterates much of the same evidence contained in his Motion for Remand (Doc. 12) to argue that Defendants should be sanctioned for removing the action to this Court. But Defendants have shown a reasonable factual basis underlying the removal; indeed, they have prevailed in showing that the Court

has subject matter jurisdiction. The criteria for issuing sanctions under Fed. R. Civ.

P. 11 are obviously not met here.

## V.    Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Remand

(Doc. 6), **DENIES** Plaintiff's Motion for Sanctions (Doc. 15), **DENIES** Defendants'

Motion to Seal (Doc. 10), and **DENIES AS MOOT** Plaintiff's Motion to Stay

Discovery (Doc. 16). The Parties are **DIRECTED** to file their Joint Preliminary

Report and Discovery Plan no later than December 14, 2022.

**SO ORDERED** this 28th day of November, 2022.

Victoria Marie Calvert
United States District Judge